UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STLAR EYVONNE WRIGHT MARTINEZ,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:14-cv-1860 WBS CKD<br><br>FINDINGS AND RECOMMENDATIONS |

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will recommend that plaintiff's motion for summary judgment be denied and that the Commissioner's cross-motion for summary judgment be granted.

BACKGROUND

      Plaintiff, born February 22, 1961, applied on March 15, 2011 for DIB and SSI, alleging disability beginning March 15, 2009. Administrative Transcript ("AT") 150-157. Plaintiff alleged she was unable to work due to high blood pressure, scoliosis, depression, stomach issues,

1

and anger. AT 225. In a decision dated January 14, 2013, the ALJ determined that plaintiff was not disabled.[1]  AT 24-34.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through September 1, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since March 15, 2009, the alleged onset date.
>
> 3. The claimant has the following severe impairments: high blood pressure, right knee arthritis, obesity, asthma and depression.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

  The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined [in the regulations] except the claimant can occasionally climb ramps and stairs and never climb ladders, ropes and scaffolds; can frequently balance; can occasionally stoop, kneel, crouch and crawl; cannot have exposure to extreme heat, humidity and atmospheric conditions and hazards defined as moving machinery and unprotected heights; can perform simple, routine, repetitive tasks; can have no interaction with the public; and can have occasional interaction with coworkers.
>
> 6. The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born on February 22, 1961 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
> 8. The claimant has a limited education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2009, through the date of this decision.

AT 26-34.

ISSUES PRESENTED

Plaintiff argues that the ALJ improperly assessed the severity of her impairments, failed to develop the record, improperly discredited plaintiff's subjective complaints and the laywitness testimony of her husband, improperly evaluated the medical evidence, and posed incomplete hypotheticals to the vocational expert.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340

F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

   A. Severity of Impairments

Plaintiff contends the ALJ improperly assessed the severity of her impairments.  An impairment or combination of impairments is deemed to be severe at step two if it "significantly limits [plaintiff's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 404.1521(a).  Basic work activities encompass "the abilities and aptitudes necessary to do most jobs," including "(1) physical functions such as walking, standing, sitting, lifting and carrying, (2) capacities such as seeing, hearing, and speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine work setting."  20 C.F.R. § 404.1521(b).  An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age,

4

education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). Impairments must be considered in combination in assessing severity. 20 C.F.R. § 404.1523.

Plaintiff contends that the ALJ should have included scoliosis at step two of the sequential analysis. Because the ALJ found plaintiff had other severe impairments and considered all of plaintiff's medical impairments in formulating the residual functional capacity, the court finds no error in the step two analysis. In addition, plaintiff concedes that plaintiff received only conservative treatment of tylenol, ibuprofen, physical therapy, and a heating pad for treatment of the pain associated with the scoliosis. Plaintiff fails to demonstrate how the scoliosis affected plaintiff's ability to perform basic work activities. Moreover, plaintiff's contention that pain from scoliosis should be considered a severe impairment ignores the governing regulations. Pain is a symptom, not an impairment. See 20 C.F.R. § 404.1529 ("[S]ymptoms . . . will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."); SSR 95-5p; see also Smolen 80 F.3d at 1281; In re Heckler, 751 F.2d 954, 955 n.1 (8th Cir. 1984) ("pain is a symptom, not an impairment"). There was no error in the step two analysis.

B. Development of the Record

Plaintiff also contends that the ALJ failed to properly develop the record with respect to plaintiff's cognitive limitations. Disability hearings are not adversarial. See DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (ALJ has duty to develop the record even when claimant is represented). Evidence raising an issue requiring the ALJ to investigate further depends on the case. Generally, there must be

some objective evidence suggesting a condition that could have a material impact on the disability decision. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th Cir. 1991). "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288.)

In this case, plaintiff underwent three consultative psychological and psychiatric examinations. AT 333-335, 428-433, 531-536. The assessments of the consultative examiners are generally consistent with respect to plaintiff's mental limitations. The record also contains mental residual functional capacity assessments of plaintiff's treating physicians and the state agency physicians. AT 525-528, 538-555, 685-687. Plaintiff contends that the ALJ should have obtained another consultative examination based on the suggestion of one examiner that plaintiff be referred for full psychological evaluation including testing. However, in formulating the residual functional capacity, the ALJ included significant mental limitations, based on substantial evidence in the record. With respect to plaintiff's cognitive impairment, the ALJ limited plaintiff to simple, routine, repetitive tasks, no interaction with the public and only occasional interactions with coworkers. AT 28. There is no evidence in the record that further psychological evaluation would have clarified the contours of plaintiff's cognitive impacts such that she would have been precluded from even simple repetitive work and such a conclusion is inconsistent with plaintiff's past work history. Under these circumstances, the record was sufficiently developed.

C. Credibility

Plaintiff further challenges the ALJ's adverse credibility finding. The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

/////

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Plaintiff testified that she could not work because she gets anxious quickly, nervous and scared. AT 56. Plaintiff also testified that she had problems with her knee in that she could not bend it back, had arthritis in her foot, and used a cane. AT 60-61. Plaintiff further testified that she had pain all the time in her shoulder and back, hips, knees, feet and hands. AT 64. Plaintiff also testified that she had problems with asthma but that she has not quit smoking. AT 65. She also testified she did not like to be around people and that she only felt safe in public if she was with people she knows. AT 65-66.

/////

The ALJ found plaintiff only partially credible. AT 30. The ALJ noted that plaintiff had received only routine and conservative medical care for complaints of high blood pressure, asthma, and obesity. AT 30. The ALJ also considered plaintiff's failure to comply with the numerous recommendations of her treating physicians that plaintiff stop smoking in order to alleviate her asthma symptoms and her noncompliance with medication regimens. AT 29, 373. The ALJ also factored into the credibility analysis plaintiff's limited mental health treatment and the lack of objective evidence supporting plaintiff's claims of minimal functioning. AT 29. The inconsistencies reported by the examiner in mental health examinations was also a factor undermining plaintiff's credibility. AT 32, 529-537. In finding that plaintiff was only partially credible, the ALJ did not totally dismiss all of plaintiff's claims of limited functioning. In the residual functional capacity assessment, the ALJ accounted for those restrictions which were supported by the record by imposing postural and mental limitations. The factors considered by the ALJ in the credibility analysis are valid and supported by the record. The credibility finding will not be disturbed.

### D. Third Party Evidence

Plaintiff also contends that the ALJ improperly rejected the lay witness evidence provided by her husband. "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919.

Plaintiff's husband submitted a third party adult function report in which he reported almost identical limitations to those reported by plaintiff herself. At 176-183, 203-210. The ALJ specifically addressed the laywitness evidence and found it partially credible. AT 30. The ALJ noted that the husband's report indicating that plaintiff could perform light chores with difficulty with concentration, standing, walking and bending was consistent with the residual functional

1  capacity. AT 30. In light of the substantial similarity between the testimony of plaintiff and her
2  husband, the reasons given for according only partial credibility to plaintiff are equally germane
3  to the husband's testimony. See Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009). There
4  was no error in the ALJ's consideration of the laywitness evidence.

### E. Medical Opinions

Plaintiff also assigns error to the ALJ's evaluation of the record medical opinions. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Plaintiff's treating psychologist, Dr. King, provided a mental medical source statement dated October 31, 2012. AT 685-689. Dr. King opined that plaintiff was moderately limited in

several functional areas with marked limitations in the ability to remember locations and work-like procedures, the ability to understand and remember detailed instructions, and the ability to maintain attention and concentration for extended periods. The ALJ assigned little weight to this opinion because it was unsupported by the records and appeared to be based on plaintiff's self-reported subjective complaints. AT 31, 614-648. The ALJ also noted that such extreme limitations were inconsistent with plaintiff's testimony that the medications were effective in controlling her symptoms. AT 31, 57. Similarly, with respect to a December 2011 mental disorder assessment of plaintiff's treating physician, Dr. Jahangiri, the ALJ rejected that portion of the opinion that plaintiff could not complete a workday as inconsistent with the medical record. AT 31, 528. The ALJ also considered the assessments of the consultative mental health examiners, finding that these opinions were consistent with a residual functional capacity limiting plaintiff to simple work with no contact with the public and occasional contact with coworkers. AT 31-32, 333-335, 428-433, 531-536. The ALJ correctly found that there was no support in the treatment record precluding plaintiff from working on a consistent basis, a finding also supported by the state agency physicians. AT 32, 515-519, 538-555. The reasons set forth by the ALJ for rejecting in part the opinions of the treating and consultative physicians meet the standards set forth above and are supported by substantial evidence.

F.  Vocational Expert Testimony

Finally, plaintiff contends that the ALJ failed to include all of plaintiff's limitations in the hypotheticals posed to the vocational expert. Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

As discussed above, the ALJ properly discredited plaintiff and her husband and properly rejected some of the extreme limitations in the record medical opinions. The hypotheticals posed by the ALJ included all of the limitations that were supported by substantial evidence. AT 76-79. There was no error in relying on the testimony of the vocational expert in finding that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. AT 33-34.

CONCLUSION

For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) be denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 17) be granted; and

3. Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 12, 2015

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

4 wright-martinez.ss